FILED - USDC - FLMD - FTM
SEP 29 2026 PM3:33

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEK MIRKO MASON, individually and as assignee of certain claims and rights of Thomas Lawrence Construction, LLC,

Plaintiff,

v. Case No. 2:26-cv-01725-SPC-KRH

DAVID B. SMALL and ROBIN E. SMALL,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS (DOC. 20)**

## INTRODUCTION

This case arises from unpaid balances for labor, materials, and services furnished on two construction projects terminated by Defendant David B. Small ("Small"). Plaintiff Mason, as assignee of TLC's identified affirmative rights, alleges $105,006.27 remains due after credit. Robin E. Small is also a defendant. No court has adjudicated TLC's claimed balance on the merits.

Small filed suit first. Before then, TLC sought resolution with Small directly, then through Small's counsel, Carlianne K. Peake ("Peake"), and later through Cheffy Passidomo, P.A., which TLC retained to assist in resolving the dispute. On November 7, 2025, TLC attorney Garett Raines asked what Small would pay toward TLC's invoices and offered releases, lien

waivers, and transition assistance; Peake instead asserted that TLC owed Small approximately $92,788. Small sued TLC on December 9, 2025.

The payment dispute and TLC's settlement efforts therefore preceded Small's contrary demand and lawsuit. Mason alleges Small used that lawsuit rather than resolve the receivable. The Court need not decide motive at the pleading stage; Doc. 20 seeks dismissal of assigned claims without a merits determination of the underlying payment dispute.

Four points matter:

1. The May 19 assignments transfer identified contract, receivable, payment, property, and lien-related rights for consideration; they do not authorize Mason to represent TLC.
2. After the initial removal was remanded because TLC, as an LLC, could appear only through licensed counsel, TLC retained Petia B. Tenev ("Tenev") and thereafter proceeded through counsel. When that relationship collapsed, Mason sought time to obtain substitute counsel, not to litigate for TLC.
3. TLC authorized the April 1 counterclaims. On April 3, Peake sent a Rule 11 threat characterizing a selected factual record as "full" and "undisputed," while omitting material contrary communications in which she participated. Tenev's billing immediately thereafter reflects Rule 11 review, narrowing of claims, transition, and withdrawal-related activity.

TLC terminated Tenev on April 5; on April 6, Tenev filed the Amended Counterclaim without TLC's authorization. Both filings were later struck for Tenev's amendment-procedure defects, not adjudicated or abandoned on the merits.

4. Rule 13, claim splitting, the lien issue, and party-specific issues require claim-by-claim analysis, not undifferentiated dismissal.

## I. THE DISPUTE AND WIND-DOWN PRECEDED THE ASSIGNMENT

- October 2025 — Small terminated the ODK project without, according to the FAC, any notice or opportunity to cure, then terminated Auto Condo while TLC claimed invoices remained unpaid. TLC demanded payment and invoked its contractual right to suspend work pending payment or dispute resolution. FAC Ex. F, Art. 4 ¶ 9. Small called that the "nuclear option" and directed Mason to communicate through Peake. FAC ¶¶ 32–67.

- October 28–31 — Mason identified TLC equipment at the properties and proposed sheriff-assisted retrieval. Small barred entry, including law enforcement. Peake offered supervised retrieval dates; TLC accepted the first date offered by Peake and coordinated law-enforcement assistance. Peake then conditioned another retrieval date on countertop delivery. The countertops were part of TLC's ODK contract scope and payment structure, not an independently owner-purchased item, and remained

under TLC's control while the parties attempted to resolve the payment dispute.

- By November 7 — TLC retained Cheffy Passidomo, P.A. ("Cheffy") to seek a non-litigation resolution; Garett Raines of Cheffy handled payment, transition, and property issues.
- November 7 — Peake told Raines that some equipment had been placed on Small's lawn, limited TLC to the front-yard area, and acknowledged that retrieval of the Auto Condo equipment still required separate arrangements. The placement was not coordinated with TLC or law enforcement and occurred late Friday afternoon, after TLC's staff had finished work and gone home for the weekend, while Peake continued to condition retrieval of the Auto Condo equipment on separate arrangements.
- November 7 — Raines asked what Small would pay toward TLC's invoices and offered releases, lien waivers, and transition assistance. Peake responded that Small claimed TLC owed him approximately $92,788.
- November 11 — TLC laid off its remaining field employees and entered wind-down with its two largest projects terminated by Small, remaining active for claim and lien preservation, collection, litigation, assignment, creditor matters, and closeout. FAC ¶ 23.

- December 9 — Small filed the first lawsuit in Florida state court against TLC. That chronology matters because Defendants characterize Mason's present action as a "third bite at the apple," a phrase suggesting repeated affirmative litigation by TLC or Mason against Small, when the earlier federal proceedings arose from removals of Small's own lawsuit and TLC's counterclaims within that action.

- January 8–20, 2026 — Mason's initial removal on TLC's behalf was remanded because an LLC must appear through counsel. Defendants note that Mason thereafter mailed an Answer and Affirmative Defenses in that first federal action without asserting counterclaims. At the time, however, Mason was proceeding pro se, was unfamiliar with federal procedure, had no CM/ECF or working PACER access, and had not received or seen Judge Steele's January 8 remand order when he mailed that paper filing. The filing therefore does not reflect knowing disregard of the remand order or a deliberate, informed decision by TLC to abandon affirmative claims. TLC then retained Tenev, who removed Small's same lawsuit on January 20. Both federal dockets thus arose from removals of litigation initiated by Small, not two failed affirmative suits by Mason.

These events predated the assignment by months. The Related Action, *Small v. Thomas Lawrence Construction, LLC*, No. 2:26-cv-00088-JES-NPM (M.D. Fla.), is expressly identified in the FAC.

## II. TLC'S AUTHORIZED COUNTERCLAIMS AND TENEV'S UNAUTHORIZED AMENDMENT

- April 1 — TLC authorized and Tenev filed the original counterclaims, including both lien-foreclosure counts. Tenev neither obtained leave to amend nor pleaded the counterclaims as part of a properly amended answer and affirmative defenses. Related Action, ECF No. 17.
- April 3 — Peake's Rule 11 threat called its equipment narrative the "full factual record" and "undisputed," and warned of a knowing and willful Rule 11 violation. Contemporaneous communications in which Peake participated contradicted those characterizations and were omitted from that presentation to Tenev, TLC's counsel.
- April 3–5 — Tenev's billing records reflect Rule 11 review, pleading revisions, narrowing, transition, and withdrawal work. TLC did not authorize narrowing of the April 1 claims.
- April 5 — TLC terminated Tenev and no longer authorized her to make substantive litigation decisions for TLC.
- April 6 — After termination, Tenev filed an Amended Counterclaim without TLC's authorization. This was not a second pleading choice by TLC. Tenev again neither obtained leave to amend nor pleaded the counterclaims as part of a properly amended answer and affirmative defenses. Related Action, ECF No. 18.

- April 6–10 — Tenev moved to withdraw on April 6. Related Action, ECF No. 20. Mason then sought time to obtain substitute counsel on April 7 and again on April 10, with the latter request seeking sixty days. Even Defendants acknowledge that Mason's April 7 and April 10 filings sought time to obtain substitute counsel. Doc. 20 at 6.
- April 14 — The Court struck the authorized April 1 Counterclaim and unauthorized April 6 Amended Counterclaim because Tenev had neither obtained leave to amend nor pleaded the counterclaims as part of a properly amended answer and affirmative defenses. It also struck Mason's first time-extension request to obtain substitute counsel because an LLC must act through counsel. Related Action, ECF Nos. 27, 29.
- April 16 — The Court permitted Tenev to withdraw and struck Mason's second time-extension request on the same representation ground. Mason sought time to retain replacement counsel, not to litigate TLC's merits. Related Action, ECF Nos. 32, 34.

The Rule 11 record was not "undisputed." Communications showed Small's denial of entry, TLC's proposed sheriff-assisted retrieval, acceptance of an offered pickup date, Peake's later countertop-first condition before equipment could be picked up by TLC, and an uncoordinated lawn placement on a late Friday afternoon while Auto Condo equipment still required separate arrangements. Although some materials were enclosed in Peake's Rule 11

threat, contrary communications and context in which Peake participated were omitted by Peake. A Rule 11 letter need not attach every email, but omission of known contrary communications undermines a record characterized as both "full" and "undisputed."

Peake also represented that investigator Victor Ortino repeatedly tried to contact Mason, while Ortino's own account described messages seeking Thomas Lawrence or Thomas Lawrence Enterprise. Because Peake already knew Mason was handling the dispute and Peake had communicated with Mason directly, the mismatch further supports an inference that the presentation was materially selective.

The chronology supports an inference that the Rule 11 threat materially influenced Tenev's abrupt change in course:

- April 3 — Peake's Rule 11 letter arrived.
- Immediately afterward — Tenev's billing records reflect Rule 11 review, narrowing of claims, transition work, and withdrawal-related activity.
- April 5 — TLC terminated Tenev's representation.
- April 6 — Tenev filed the unauthorized Amended Counterclaim.

Mason does not ask the Court to decide subjective intent or legal causation now. The narrower point is that Defendants cannot treat the April 3 letter as an objective or adjudicated record when contemporaneous communications

contradicted its premise. The strike orders resolved procedure, not the merits.

By then, TLC had been in wind-down for about five months. Many firms declined to replace Tenev, while others demanded substantial retainers—generally beginning around $15,000 to $25,000—to assess the stricken filings, determine whether corrective action remained available, and assume the representation. TLC later advised the Related Action that, despite contacting multiple attorneys and firms, its financial condition and the cost of replacement counsel prevented retention. Related Action, ECF No. 40 ¶ 4.

## III. THE MAY 19 ASSIGNMENTS TRANSFER PROPERTY; THEY DO NOT APPOINT MASON TO REPRESENT TLC

### A. The documents plead a genuine economic transfer.

The FAC assignments transfer to Mason individually TLC's "right, title, and interest" in legally transferable contract, payment, receivable, collection, property, lien-related, proceeds, and enforcement rights, with authority to settle, collect, release, satisfy, or dismiss them. FAC Exs. A–D.

They recite pre-existing value owed to Mason for unpaid compensation, management and operational work, claim- and lien-preservation work, wind-down services, unreimbursed costs, and advances. They shift future enforcement time, cost, and risk to Mason while leaving TLC's debts, warranty and defect liabilities, defense obligations, taxes, and other liabilities with TLC.

Most important under *Palazzo*, the instruments expressly prohibit Mason from appearing for, defending, or prosecuting claims on behalf of TLC, or acting as its counsel, agent, alter ego, or general litigation representative. Mason proceeds only in his individual capacity as assignee and owner of the assigned rights. The documents were executed May 19 through remote online notarization; the separate lien assignment was later recorded. Florida law permits assignment and recording of a construction lien before discharge. Fla. Stat. § 713.19.

**B. *Palazzo* involved continued pro se litigation of corporate claims; this record is materially different.**

*Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385–86 (11th Cir. 1985), holds that an artificial entity must appear through licensed counsel and cannot evade that rule through an assignment to a lay owner. There, after counsel withdrew and the court ordered the corporation to obtain counsel, Frank continued filing for all plaintiffs—including an appeal—despite orders that he could represent only himself and repeated admonitions to secure counsel. *Id.* at 1383–86.

This record is materially different:

- After the initial removal was remanded — Mason had removed Small's case on TLC's behalf, and the Court remanded because TLC, as an LLC, could appear only through licensed counsel. TLC then retained Tenev, a licensed attorney, and thereafter proceeded through counsel.

- Through counsel — Tenev presented TLC's affirmative claims. Her post-termination amendment was unauthorized and was not a second strategic choice by TLC.
- Substitute counsel — after the relationship collapsed, Mason sought time to obtain another lawyer, not to litigate TLC's claims or defenses himself.
- No present representation — the assignments expressly prohibit Mason from representing or defending TLC, and he does not purport to do so in the Related Action.
- Economic transfer — the wind-down assignment transferred identified assets and enforcement risk to Mason while TLC retained its liabilities.

Calling these events "evasion tactics" conflates seeking counsel with acting as counsel. *Palazzo* does not make those acts equivalent.

*In re Rodriguez*, 633 F. App'x 524, 526 (11th Cir. 2015), applied Palazzo to a mechanic's lien held by a corporation and held that assignment of that lien claim to the corporation's pro se principal could not be used to circumvent the requirement that the corporation litigate through counsel. But the court also held that the bankruptcy court erred by striking Wolfe's filings insofar as they asserted rights he held individually under a separate state-court judgment. Id. at 526. Rodriguez therefore distinguishes between an attempted assignment used to prosecute a corporation's claim pro se and rights actually held by the individual. It did not analyze a wind-down

transfer for pre-existing consideration that shifted ownership and enforcement risk while expressly prohibiting the assignee from representing the entity. Mason alleges such a transfer as to TLC's assigned contract, receivable, payment, and property rights. Rodriguez therefore does not by itself dispose of those claims; the separate lien issue is addressed in Section VI.

**C. Other controlling and Florida authority recognizes genuine assignments as enforceable property transfers.**

The Supreme Court held in *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 285–86, 289 (2008), that an assignee holding legal title to a money claim may have Article III standing to pursue that claim in its own name, even when the assignee must remit the recovery to the assignor. The Court emphasized the longstanding tradition permitting holders of legal title to sue and expressly distinguished merely hiring someone to litigate from assigning the claim itself: an assignment confers a property right. *Sprint* did not involve the corporate-counsel rule addressed in *Palazzo* and *Rodriguez*; it establishes the distinct principle relevant here that transfer of a claim can create property in the assignee rather than merely appointing the assignee to represent the assignor. Florida law is consistent: the Florida Supreme Court held that an account receivable or similar contractual chose in action may be assigned so that the assignee "may sue on it in his own name and make

recovery." *Boulevard Nat'l Bank of Miami v. Air Metal Indus., Inc.*, 176 So. 2d 94, 97 (Fla. 1965). See also *Kumar Corp. v. Nopal Lines, Ltd.*, 462 So. 2d 1178, 1185 n.9 (Fla. 3d DCA 1985) (assignee is the real party in interest). *Hutson v. Fulgham Industries, Inc.*, 869 F.2d 1457, 1463 n.16 (11th Cir. 1989), arose under Alabama dissolution law. Its footnote 16 observed that a claim initiated during wind-up and then assigned to a shareholder could thereafter be pursued by the shareholder.

The Rule 12 question is whether the FAC and incorporated instruments plausibly plead a bona fide transfer of legally transferable assets to Mason for value while leaving TLC's liabilities and defense obligations with TLC. They do: the instruments identify the rights, consideration, ownership and enforcement control, shifted enforcement cost and risk, and prohibition on Mason representing TLC. Defendants may dispute purpose, consideration, or legal effect, but cannot convert that pleaded transfer into a sham at Rule 12 merely by calling it a "fiction."

## IV. RULE 13 REQUIRES A CLAIM-BY-CLAIM DECISION, NOT A FINDING THAT TLC CHOSE TO ABANDON ITS CLAIMS

Rule 13(a) requires a party to state a counterclaim it has when serving its pleading if the claim arises from the same transaction or occurrence; the Eleventh Circuit applies a logical-relationship test. *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453, 1454–55 (11th Cir. 1985),

makes compulsory-counterclaim status a question of law and applies the logical-relationship test to the operative facts of the particular claims; a broad factual connection alone is insufficient. It also cautions that "[d]ismissal with prejudice is a severe sanction which should only be used in extreme circumstances," describing it as a "sanction of last resort," generally "reserved for cases of willful disobedience to court orders." Id. at 1454–55. Mason does not propose an "attorney-error" exception. The question is which present claims were compulsory at the relevant pleading date and what follows where TLC actually attempted to present counterclaims through licensed counsel, but counsel repeatedly used the wrong amendment procedure.

*O'Brien v. Flick, No. 25-10143,* 2025 WL 2731627, at *1–2 (11th Cir. Sept. 25, 2025) (unpublished), involved claims that matured before the applicable counterclaim deadlines and simply were not asserted—not claims TLC actually authorized and attempted to present through licensed counsel, where the first filing was procedurally defective and the second was filed after TLC terminated Tenev and without TLC's authorization. The April filings matter because they prevent treating counsel Tenev's procedural failures as a factual finding that TLC deliberately withheld, narrowed, or abandoned its claims.

The Court should therefore apply Rule 13 claim by claim at the relevant pleading date. The April 14 strike order resolved pleading procedure; it did not adjudicate whether Small paid TLC, whether TLC owed Small $92,788, or whether TLC's affirmative rights lacked merit. Nor does the strike itself establish that TLC deliberately abandoned those rights.

## V. CLAIM SPLITTING REQUIRES CLAIM-SPECIFIC ANALYSIS

*Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841–43 (11th Cir. 2017), and *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236–37 (11th Cir. 2021), require comparison of the parties or privies and the nucleus of operative facts underlying the two actions. Those authorities do not make common subject matter alone sufficient for claim splitting. TLC did not simply hold back claims for a second suit; it attempted to assert affirmative claims through licensed counsel Tenev before those pleadings were struck for procedural defects, and later transferred identified assets during wind-down. The analysis therefore must turn on the parties or privies and the actual nucleus of operative facts, not merely that both actions concern the same construction projects.

## VI. THE LIEN ISSUE IS SEPARATE FROM THE CONTRACT DEBT

The FAC alleges service of the Smalls' Notices of Contest of Lien on February 4, 2026, triggering the 60-day period under Fla. Stat. § 713.22(2). TLC, through licensed counsel, filed its authorized lien-foreclosure

counterclaims on April 1, within that period. Those claims were later struck because Tenev had neither obtained leave to amend nor pleaded the counterclaims as part of a properly amended answer and affirmative defenses.

*Jon M. Hall Co., LLC v. Canoe Creek Invs., LLC*, 385 So. 3d 648, 652, 654 (Fla. 2d DCA 2024), involved a lienor that failed to bring the required claim against the bond surety within 60 days. Here, licensed counsel placed TLC's lien-foreclosure counterclaims on the docket within the statutory period, and the Court later struck them for pleading defects. *Hall* therefore does not decide the effect of that procedural sequence.

In any event, extinguishment of the lien would not extinguish the underlying payment claims. Section 713.30 expressly preserves an action at law by a lienor or assignee, and *Hernandez v. Burleigh House Condominium, Inc.*, 419 So. 3d 169, 172–73 (Fla. 3d DCA 2025), held that extinguishment of a construction lien under § 713.22(2) did not extinguish the lienor's unjust-enrichment claim and reiterated that discharge of a lien does not preclude other contractual remedies. Accordingly, whatever the Court determines as to Count VI, that lien determination does not itself resolve Counts I–III.

## VII. THE COUNTS SHOULD BE CONSIDERED INDIVIDUALLY

Counts I and II seek the assigned contract balance and receivable; Count III pleads unjust enrichment in the alternative. The FAC alleges $117,249.87

invoiced, less a $12,243.60 credit, leaving $105,006.27. Count IV concerns assigned rights to TLC-owned equipment and pleads denied and conditioned access. Count V seeks declaratory relief; Count VI is the lien claim. Robin Small's role is principally tied to property ownership and lien relief, so a party-specific ruling as to her should not automatically dispose of claims against David B. Small.

## VIII. THE FORGERY INSINUATION AND EMBEDDED SANCTIONS REQUEST DO NOT SUPPORT DISMISSAL

Doc. 20 accuses the assignment documents of containing "fabricated notary signatures" while simultaneously assuming their authenticity *arguendo*. Doc. 20 at 15–16 n.5. The notarizations are objectively verifiable: Mason obtained them through a third-party remote-online-notary platform, and the notary's Florida commission is independently verifiable. Defendants identify no contrary evidence or repudiation by the notary. This is a factual accusation of falsification, not legal argument. Rule 11(b)(3) required reasonable inquiry and evidentiary support before counsel presented it to this Court. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254–55 (11th Cir. 1996). The accusation cannot become a Rule 12 factual finding merely because counsel placed it in a motion.

Defendants also request Rule 11 sanctions inside Doc. 20. A party-initiated Rule 11 motion must be separate and comply with the 21-day safe

harbor. Fed. R. Civ. P. 11(c)(2). A party cannot evade that requirement by embedding a sanctions demand in another motion and asking the Court to act *sua sponte*. *Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010). If the Court independently invokes Rule 11(c)(3), it must issue its own show-cause order. Unlike Defendants, Mason does not seek sanctions through an embedded request and preserves any procedurally available relief under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority. The embedded sanctions request by Defendants should be denied.

## IX. THE PRIOR DENIAL AND THE ANSWER DEADLINE

The Court denied Defendants' first Rule 12 motion, Doc. 18, on September 11, 2026, for failure to comply with Local Rule 3.01(g). The order stated "denied without prejudice"; it did not set a different responsive-pleading deadline or expressly authorize another pre-answer motion. Rule 12(a)(4)(A) provides that, unless the Court sets a different time, denial of a Rule 12 motion requires service of the responsive pleading within 14 days after notice of the Court's action. Defendants instead filed Doc. 20 four days later.

Mason preserves the objection raised during the September 15 conference that the September 11 denial triggered Rule 12(a)(4)(A)'s answer period. Mason does not contend that a denial without prejudice necessarily bars a corrected filing; the narrower point is that such a filing does not, by its own force, erase the answer deadline created by the prior denial. If Doc. 20 is

denied, the Court should set a prompt and definite deadline for Defendants to answer.

## CONCLUSION

This case should not be reduced to the proposition that Mason is acting as TLC's lawyer. The record instead shows:

- **April 1, 2026** — TLC authorized its affirmative counterclaims, including the lien-foreclosure claims, and Tenev filed them as licensed counsel. But Tenev did not obtain leave to amend and did not plead those counterclaims as part of a properly amended answer and affirmative defenses.
- **April 3** — Peake sent a Rule 11 threat characterizing a selected factual record as "full" and "undisputed," while omitting material contrary communications in which she personally participated.
- **Immediately thereafter** — Tenev's billing reflects Rule 11 review, narrowing of claims, transition work, and withdrawal-related activity.
- **April 5** — TLC terminated Tenev.
- **April 6** — Tenev nevertheless filed an unauthorized Amended Counterclaim and again failed both to obtain leave to amend and to plead the counterclaims as part of a properly amended answer and affirmative defenses.

- **Thereafter** — TLC's counterclaims were struck for procedural defects, not adjudicated on the merits, and Mason sought time to obtain replacement counsel.

That sequence supports the inference that Peake's materially selective Rule 11 presentation influenced the abrupt breakdown in TLC's representation and the procedural course that followed. It should not be recast as a deliberate decision by TLC to abandon its claims or evade the corporate-counsel rule.

TLC later transferred identified affirmative assets for consideration while retaining its liabilities and expressly prohibiting Mason from representing it. *Palazzo and Rodriguez* prohibit evasion of the corporate-counsel rule, but they do not eliminate bona fide assignments or replace claim-specific analysis under Rule 13, claim splitting, and the lien statutes. The lien remedy is distinct from the underlying payment remedies, which do not disappear merely because the lien issue is separately adjudicated. The Court should therefore reject wholesale dismissal and decide each asserted defense against the particular claim to which it applies.

Mason respectfully requests that the Court:

- DENY Doc. 20 and ORDER Defendants to answer the First Amended Complaint;
- DENY the Rule 11 sanctions request embedded in Doc. 20;

- alternatively, if the Court determines that any issue warrants count- or party-specific relief, limit any ruling to the particular count, party, and ground actually implicated;
- leave all other claims unaffected by any such ruling; and
- permit amendment of any curable pleading or party defect under Rules 15(a)(2) and 17(a)(3), as applicable, and provide Rule 12(d) notice before resolving disputed matters outside the pleadings.

Dated: September 25, 2026

Respectfully submitted,

Alek Mirko Mason, pro se
Plaintiff, individually and as assignee of certain claims and rights of Thomas Lawrence Construction, LLC

14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, Texas 77318
Telephone: (830) 830-6374
Email: amason.litigation@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, I served a true and correct copy of the foregoing by United States Mail, postage prepaid, upon all counsel of record.

Alek Mirko Mason